Nathan Brown (State Bar No. 033482)
Brown Patent Law
15100 N 78th Way Suite 203
Scottsdale, AZ 85260
Phone: 602-529-3474
E-mail: Nathan.Brown@BrownPatentLaw.com

*Attorney for Plaintiff, others listed below.*

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF ARIZONA

―――――――――――――――――――

**Sidney Naiman**, individually and on behalf of a class of all persons and entities similarly situated,

        Plaintiff,

vs.

**HealthCompare Insurance Services, Inc**.,

        Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communications Commission ("FCC").[1]

2. Plaintiff Sidney Naiman brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

3. In violation of the TCPA, HealthCompare Insurance Services, Inc. ("HealthCompare") made telemarketing calls to a cellular telephone number of Mr. Naiman for the purposes of advertising its goods and services using an automated dialing system, which is prohibited by the TCPA.

4. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse,* the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

5. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶1 (July 10, 2015).

**Parties**

6. Plaintiff Naiman is a resident of Arizona in this District.

7. Defendant HealthCompare Insurance Services, Inc. is a Delaware corporation with its principal place of business in Oregon. HealthCompare makes telemarketing calls nationwide, including into this District, as it did with the Plaintiff. HealthCompare is also registered to do business in the state of Arizona, and has a registered agent of Corporation Service Company, 8825 N 23rd Avenue, Suite 100, Phoenix, AZ 85021.

**Jurisdiction & Venue**

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because the calls that were initiated to the Plaintiff that are the subject of the litigation were made to a cellular telephone number in this District. As such, a substantial part of the events giving rise to the claims occurred in this District. Furthermore, the Defendant resides in this District.

**TCPA Background**

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

14. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written

4

agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

16. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

17. *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

18. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

19. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited May 3, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

20. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited May 3, 2019).

**Factual Allegations**

21. HealthCompare offers health insurance services for individuals and families.

22. HealthCompare generates news business through telemarketing.

23. One of HealthCompare's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

24. HealthCompare engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

25. Through this method, HealthCompare shifts the burden of wasted time to the consumers it calls.

26. On June 6, 2019, the Plaintiff received a call on his cellular telephone number, 925-984-XXXX.

27. The recipient of the call said "hello" several times and received no response.

28. While no individual appeared on the other line, there was a distinct "click and pause".

29. Both facts verify that the call was made with an ATDS.

30. The call was connected to an individual, "Glenn Miller", who identified that his company was HealthCompare.

31. Shortly after the call was connected to a live individual, the Plaintiff was able to ascertain that HealthCompare's services were being offered.

32. To verify this information, the Plaintiff received an e-mail from Glenn Miller, whose e-mail address was "Glenn.Miller@healthcompare.com".

33. The e-mail from Mr. Miller promoted the Medicare insurance supplement that he had promoted on the phone.

34. On June 18, 2019, the Plaintiff received a call on his cellular telephone number, 925-984-XXXX.

35. The recipient of the call said "hello" several times and received no response.

36. While no individual appeared on the other line, there was a distinct "click and pause".

37. Both facts verify that the call was made with an ATDS.

38. The call was connected to an individual, "Eric Nelsen", who identified that his company was HealthCompare.

39. Shortly after the call was connected to a live individual, the Plaintiff was able to ascertain that HealthCompare's services were being offered.

40. To verify this information, the Plaintiff received an e-mail from Eric Nelsen, whose e-mail signature block identified himself as "Benefit Advisor, HealthCompare Insurance Services".

41. The calls came from (844) 233-2175.

42. Other individuals have complained about calls from that number.

43. In fact, the website and application "Nomorobo", awarded the Federal Trade Commission's Robocall Challenge Technology Achievement Award has identified calls from this number as a "Robocaller". *See* https://www.nomorobo.com/lookup/844-233-2175. (Last Visited July 2, 2019).

44. The calls were not necessitated by an emergency.

45. Plaintiff's privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendant. The calls were an annoying, harassing nuisance.

46. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and

harassed, and, in some instances, they were charged for incoming calls. The calls occupied his cellular telephone lines, rendering them unavailable for legitimate communication.

## **Class Action Allegations**

47. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

48. The class of persons Plaintiff proposes to represent are tentatively defined as:

> All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting HealthCompare; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Excluded from the class are the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

49. The class as defined above is identifiable through phone records and phone number databases.

50. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

51. Plaintiff is a member of the proposed class.

52. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using automated telemarketing to call cellular telephones;

    b. Whether Defendant placed calls using an automatic telephone dialing system;

    c. Whether Defendant placed calls without obtaining the recipients' prior consent for the call;

    d. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

53. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by the Defendant and are based on the same legal and remedial theories.

54. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

55. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

56. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

57. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

### First Cause of Action

### Violation of the TCPA, 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(a)

58. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

59. The Defendant violated the TCPA by (a) initiating a telephone call using an automated dialing system or prerecorded voice to Plaintiff's telephone numbers assigned to a cellular telephone service, or (b) by the fact that others caused the initiation of those calls on its behalf. *See* 47 C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

60. The Plaintiff and the putative class are entitled to injunctive relief under the TCPA and do seek that in the form of prohibiting the Defendant from using an automatic telephone dialing system in the future, absent an emergency.

61. The Defendant's violations were negligent, willful, or knowing.

### Prayer for Relief

For himself and all class members, Plaintiff requests the following relief:

1. That Defendant be prohibited from using an automatic telephone dialing system in the future, absent an emergency.

2. That Defendant, their agents, and anyone acting on their behalf, be immediately restrained from altering, deleting, or destroying any documents or records that could be used to identify class members.

3. That the Court certify the proposed class under Rule 23 of the Federal Rules of Civil Procedure.

4. That the Plaintiff and all class members be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each knowing violation, and all other relief that is joint and equitable.

5. The TCPA authorizes injunctive relief to prevent the Defendant from using automatic telephone dialing equipment.

6. The Plaintiff respectfully petitions this Court to order the Defendant, and their employees, agents and independent contractors, to immediately cease engaging in unsolicited telemarketing in violation of the TCPA.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: July 18, 2019                    Respectfully Submitted,

                                        */s/ Nathan Brown*

Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

Edward A. Broderick
Broderick Law, P.C.
99 High St., Suite 304
Boston, MA  02110
(617) 738-7080
ted@broderick-law.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net